(29 Misc. Rep. 39.)

### MOTT v. NEW YORK SECURITY & TRUST CO. et al.

(Supreme Court, Special Term, New York County.   September, 1899.)

1. PLEADING—DEMURRER—LACHES.
    While the laches of a plaintiff is matter of defense, yet, where a complaint stated that plaintiff did not avail himself of the terms of an agreement under which bonds of a consolidated railroad were to be exchanged for bonds of one of the constituent companies for a period of nine years, such allegation is equivalent to an averment that he had failed to tender his bonds for exchange, and hence may be taken advantage of on demurrer that because of such laches the complaint did not state facts sufficient to constitute a cause of action to compel such exchange.

2. RAILROADS—CONSOLIDATION—EXCHANGE OF BONDS—BONDHOLDER'S RIGHTS.
    Where an agreement for consolidation of certain railroads authorized the directors of the consolidated company to exchange its bonds for bonds of the consolidated companies, on tender by the bondholders, and to take such steps as might be necessary to protect the company against bondholders who did not accept such exchange, such bondholders are not parties in interest or cestuis que trustent under such agreement, and hence are not entitled to sue to compel such exchange.

Action by Valentine Mott against the New York Security & Trust Company and others.   Demurrer to the complaint.   Sustained.

Baldwin & Boston, for plaintiff.

Shearman & Sterling, for defendant railroad company.

Hornblower, Byrne, Taylor & Miller, for defendant trust company.

STOVER, J.   The plaintiff brings this action, on behalf of himself and all others similarly situated, to compel the defendant trust company to deliver to him certain bonds executed by the defendant railroad company.   The complaint alleges:   That in and after the year 1887 the Huntingburg, Tell City & Cannelton Railroad Company (which will be called the "Huntingburg Road") issued its first mortgage bonds, of $1,000 each, to the American Loan & Trust Company of Massachusetts, and Noble C. Butler, of Indianapolis, Ind., payable on the 1st day of October, 1927, in gold coin of the United States, with interest at the rate of 6 per cent. per annum from date until paid, on presentation and surrender of the coupons for interest attached.   That, to secure the payment of the bonds, a mortgage upon the railways, property, equipment, and franchises of the Huntingburg Road was executed to the American Loan & Trust Company and Noble C. Butler, as trustees.   That, as additional security for the payment of the said bonds and interest, the Louisville, Evansville & St. Louis Railroad Company guarantied the payment of the principal and interest of each of the said bonds, by a written guaranty, under seal of said company, indorsed on each of said bonds.   That said bonds were duly issued and indorsed with the guaranty as

aforesaid, and that plaintiff is the owner of eight of said bonds. That on or about the 21st day of May, 1889, the said Huntingburg, Tell City & Cannelton Railroad Company entered into an agreement with the Louisville, Evansville & St. Louis Railroad Company, the Illinois & St. Louis Railroad & Coal Company, the Belleville, Centralia & Eastern Railroad Company, and the Venice & Carondelet Railway Company, various corporations organized under the laws of the states of Illinois and Indiana, whereby the aforesaid railroad companies did lawfully consolidate and merge into one corporation, under the corporate name of the Louisville, Evansville & St. Louis Consolidated Railway Company, which said consolidated corporation is one of the defendants herein. That by said agreement of consolidation it was agreed that all the stock and property, real, personal, and mixed, were, by the terms of the consolidation, consolidated under the name of the Louisville, Evansville & St. Louis Consolidated Railroad Company, upon the terms and provisions of the consolidation set forth in the agreement. That by said plan of consolidation it was provided that the said several corporations agreed that the mortgages now existing upon the property of the parties of the first, second, fourth, and fifth parts (the Huntingburg Road being the party of the fifth part) should be taken up; that there should be issued by said consolidated company 8,000 consolidated first mortgage 5 per cent. 50-year gold coupon bonds, of $1,000 each, bearing date July 1, 1889, interest payable semiannually, and secured by a mortgage or deed of trust on the entire property owned, held, controlled, or hereafter to be owned or controlled, by said companies. "All of the stock and bonds of the said consolidated company provided for herein to be placed in some safe place, by the direction of the board of directors of said consolidated company, and thereafter held in trust for the purpose of exchange according to the terms of the articles of consolidation, except as to 925 of said bonds hereinafter provided for. And, in case any holder or holders of any of the bonds or stock of said constituent companies shall neglect or refuse to exchange any of such bonds or stock for the said consolidated bonds as herein provided, the directors of said consolidated company shall be empowered to make such arrangements in regard thereto as in their opinion the interest of said consolidated company may require." And it was further provided that the board of directors of said consolidated company should have power, and was thereby directed, without any formal vote of the stockholders, to make, execute, and deliver all such instruments, contracts, deeds of trust, mortgages, bonds, scrip, and certificates of stock and other instruments of every kind and nature whatsoever, which are contemplated in or may be required to carry out the true intent and meaning of any provisions of these articles, etc. It was further provided, among various other provisions, that the bonds, being prepared and ready for issue, are to be distributed as follows: "(d) To be used in taking up, and in satisfaction of, the first mortgage bonds of said Huntingburg, Tell City & Cannelton Railroad Company, and in the redemption thereof, 300 of said bonds. * * *" That thereafter it was resolved by the stockholders of said consolidated company, in or about the month of May,

1889, that the said Louisville, Evansville & St. Louis Consolidated Railroad Company, by its president and secretary, "shall have the power, and is hereby authorized and directed, to prepare, print, execute, and deliver $8,000,000 of first consolidated mortgage fifty-year five per cent. gold coupon bonds, interest payable semiannually, and a deed of trust or mortgage securing said bonds, to the New York Security & Trust Company and Josephus Collett, trustees, as provided in the agreement of consolidation aforesaid." And that thereafter, pursuant to such authority, said bonds were made and delivered to the trustees therein named, and the mortgage upon the property of the railroad company duly delivered to the trustees, the New York Security & Trust Company and Josephus Collett, and that the same were delivered to the trustees in trust for the purposes set forth in reference thereto in said articles of consolidation; being the provisions above quoted. That the plaintiff herein was ignorant of the trust created until on or about the 1st day of December, 1898. That Josephus Collett, one of the trustees, departed this life on or about the year 1893, leaving the said New York Security & Trust Company the sole surviving trustee. That the plaintiff has not neglected or refused to exchange his bonds of the Huntingburg Road for said consolidated bonds of said consolidated railroad company. That on or about the 13th of December, 1898, the plaintiff, Valentine Mott, through his duly-authorized agent for that purpose, presented his bonds of the Huntingburg Road, with the coupons annexed thereto accruing semiannually, from and including the coupon maturing October 1, 1894, to the New York Security & Trust Company, sole surviving trustee, and demanded in exchange therefor eight $1,000 consolidated first mortgage 5 per cent. 50-year gold coupon bonds of the Louisville, Evansville & St. Louis Consolidated Railroad Company, issued in pursuance of the articles of consolidation aforesaid, and tendered the said Huntingburg, Tell City & Cannelton bonds for exchange and redemption as provided in said articles of consolidation. That the said New York Security & Trust Company refused to comply with the plaintiff's demand. There is also an allegation that there are various other holders of bonds of this same character, and he asks relief,—that the trust company be declared trustee of the bonds, and that it account to the plaintiff and those similarly situated with him for the bonds applicable to exchange, and that the bonds of the consolidated company be delivered in exchange for the bonds of the Huntingburg Company.

A demurrer is interposed to this complaint, that there is a defect of parties, in that neither the American Loan & Trust Company nor Noble C. Butler is made a party to the action, and that it appears upon the face of the complaint that it does not state facts sufficient to constitute a cause of action. The theory of the plaintiff is that by the agreement of May, 1889, the defendant trust company was constituted a trustee for the benefit of the bondholders of the Huntingburg Road, and that the Huntingburg bondholders thereby acquired certain vested rights in and to the bonds issued under the agreement, which may be enforced against the trustee and the grantor.

Before discussing the main question, I think it best to dispose of the question of pleading which is raised upon the argument, namely, that the court cannot dispose of certain questions, and cannot consider certain propositions, growing out of the laches of plaintiff, because they are matters of defense, and must be pleaded, and that the court, upon this motion, has no right to consider the delay of the plaintiff from 1889 to 1898. I do not think this is sound. Under our system of pleading, a demurrer of this kind to a complaint is that it appears upon the face of the complaint that the facts stated are not sufficient to constitute a cause of action. Payment is a matter of defense, and, unless pleaded, is not available; yet if a plaintiff, in framing his complaint, should insert allegations which showed that the claim, if one existed, had been paid, certainly it would appear upon the face of the complaint that it did not state facts sufficient to constitute a cause of action. So with an accord and satisfaction, and various other facts which are pure matters of defense; yet, if the pleader sees fit to insert them in the complaint, they must be given such force against him as they are entitled to. So in this case the pleader has stated that the plaintiff was ignorant of the existence of the trust in his favor from 1889 to 1898, and that he then tendered the bonds owned by him, together with the coupons covering the interest from 1894. So here is an allegation that from 1889 to 1898 no steps were taken by the plaintiff to avail himself of the terms of the agreement, and it is equivalent to the allegation that he neglected it, and his general allegation that he has not neglected or refused to exchange his bonds must be interpreted with this statement, and qualified accordingly. The effect of the additional allegation is to destroy the presumption which would ordinarily obtain by the unqualified allegation of a fact, the presumption being, in this case, that the plaintiff had not neglected or refused to; but, with the allegation that he knew nothing of the agreement until a recent date, this presumption is entirely destroyed, as, coupled with the allegation that he did make a tender at a recent date, it is equivalent to a statement that no other tender or effort to exchange was made until the recent date. So, in an action of debt, the allegation of the debt, and the other legal requirements to constitute a cause of action, leaves the presumption that the debt is unpaid; but, if facts which overcome this presumption are alleged, the whole force of the presumption is destroyed, and the allegation must be construed with the presumption negatived. He has undertaken to excuse that neglect by stating that he was ignorant of his rights. The contract agreement does not provide that notice shall be given to the bondholders, nor is there any duty by the trustee, or any of the parties thereto, to give notice to the bondholders of the agreement. This may be of more or less importance in considering hereafter the question as to what the real intent and purpose of the agreement were, and for whose benefit the trust was created. It was held in Catlin v. Green, 120 N. Y. 441, 24 N. E. 941, that, in a contract where no notice was required, the lack of notice was no excuse for laches, and in that case, where nine years had elapsed, the court refused to interfere. It was there stated that

the option for exchange should have been exercised within a reasonable time, and the judgment dismissing the complaint was affirmed.

But I am inclined to think the demurrer must be sustained upon a fundamental ground, going to the very root and core of the plaintiff's contention, namely, that under the agreement of consolidation no right of action was conferred upon the bondholders of the Huntingburg Road, and that they were not cestuis que trustent for whom and in whose behalf a court of equity could intervene. It becomes important to understand fully the object and intent of the consolidation. · It is true that, by the consolidation, the new company taking the property, franchises, and effects of the various companies entering into the agreement, the consolidated company would become bound for the indebtedness of the former companies, and, to the extent of the properties it received, liable to account therefor. In order, then, to facilitate, for their own purposes, the funding of the debt, they agreed that certain new bonds should be issued, and a new mortgage executed, which should be at a lower rate of interest than the old bonds, upon the several properties acquired, and that the same should be secured by a mortgage upon the entire consolidated property; and for that purpose the bonds were issued, and the mortgage executed and deposited with the trustee for exchange. It will be seen that the stockholders are entirely passive in the negotiations; that they do not assume any responsibility; that no agreement is made by them or in their behalf that they will exchange, but, upon the contrary, the agreement itself contemplates that they may not exchange. And it is provided that, in case they shall neglect or refuse to exchange, the directors may make such terms as to them may seem fit to protect the interests of the consolidated company. It will be seen that this act was, then, not primarily for the benefit of the bondholders, but for the purpose of effecting the consolidation between the several companies. It was the several companies that were interested in the consolidation, and the interest of the bondholders, so far as the agreement was concerned, was an incidental one. It may have been to their interest, or it may have been to their detriment. It is sufficient to say that their interest was not considered, but that was left for future determination by the bondholders themselves, and they might or might not see fit to exchange their bonds. Until such time as they did exchange, no new contract was entered into by them. It is a change of security,—a new contract. None of the parties to the agreement of consolidation had any right or authority to undertake to make a contract which would bind the bondholders of the consolidated company, nor did they assume to do so. It may be true now that the several companies have a right to insist that the trustees shall carry out the agreement, but with that we are not concerned in this action. The plaintiff must stand upon his rights. None of them are considered, except indirectly, by the agreement of consolidation. His position is that of a third party who is interested in the contract, but whose interests are not the subject of the agreement, except incidentally; the primary consideration being the interests of the contracting parties themselves. He cannot avail himself of the agreement at any time, except by and with

the consent of the contracting parties; and their agreement may be varied by them in such manner as they deem their interests demand, without considering the plaintiff, until he has acted and obtained the new agreement which was authorized by the consolidation. It is a permission on the part of the consolidated company and its directors to enter into a new contract with the bondholders; but it is solely for their interests, the contract is under their control, and there can be no right of action in the plaintiff growing out of such contract until there had been an exchange, or some further act within the agreement itself by the contracting parties.

I am considering these propositions upon the assumption that all that is claimed for the decisions of the courts of the state of New York is justified, and that a promise made by one to another, for the performance of which a benefit may ensue to a third person, may, under certain conditions, confer a right of action. I am aware that this is neither universally held within the United States, nor is it adopted by the federal courts or all other courts of the Union. For example, the promise of a grantee in a deed to pay a mortgage inures to the grantor under the laws of New York, but such is not the rule of law in various other forums. But assuming all that may be fairly claimed for the cases, beginning with Lawrence v. Fox, 20 N. Y. 268, and following down, I think this contract under consideration does not confer any interest upon the bondholder, except a statement of a willingness or a license, revocable at pleasure, to exchange bonds, and until such exchange has been effectuated the bondholder has no enforceable rights under the consolidation agreement.

Another consideration which strengthens this view is that by the terms of this agreement it was understood and declared that the mortgage is to be canceled and taken up. This, of course, could not be done, nor could the mortgage be satisfied, without the intervention of the trustee under the first mortgage; and while it may be true that the mortgage debt would be, pro tanto, reduced, yet the only way that the defendants can avail themselves of the payment and cancel the mortgage would be by another action, in which it might be declared that the mortgage should be canceled, and to which the trustees would be necessary parties. There is an entire lack of mutuality in the contract, so far as the plaintiff is concerned; and, if I am correct in the view that I have taken as to his status in reference to the trust, he can have no standing, except under a contract upon a valid consideration, and one which was mutually binding upon the parties.

Another consideration: The agreement evidently contemplated that the bondholders might refuse to exchange, and in that event the directors were left with a discretion to further the interests of the consolidated company. If the trust agreement was binding, and was to inure solely for the benefit of the bondholders, the plaintiff would have an equal right to compel them to come to terms with him, although he had neglected or refused to exchange in the first instance. But I think it must be quite clear that it is erroneous to say that the agreement was entered into for the benefit of the plaintiff and others

similarly situated, except incidentally, and that they are not cestuis que trustent, and, in the absence of an agreement binding between the consolidated company and the plaintiff, the trustees owed no active duty to the plaintiff, but that, when spoken of as trustees, they must be understood to be trustees for the purposes of the consolidation, and for the purposes of protecting the interests of the parties to the consolidation agreement. As was said in Simson v. Brown, 68 N. Y. 361, "it is not every promise made by one to another, from the performance of which a benefit may ensue to a third, which gives a right of action to such third person; he being neither privy to the contract nor to the consideration. The contract must be made for his benefit, as its object, and he must be the party intended to be benefited." And the cases are there cited sustaining that proposition, and it cannot be successfully questioned.

Another consideration is urged upon the argument of the demurrer, which I have not regarded as controlling, but still may be entitled to some weight, namely, that the agreement contemplated the cancellation of the mortgages, and, in order that this should be accomplished, it would be necessary that all of the bondholders should agree to surrender the old bonds in exchange for the new. With the view that I have taken of the fundamental question in this case, it is unnecessary to consider at any great length this proposition; but, assuredly, if it should be determined that it was the intention of the consolidation agreement that the bonds were to be considered as one entirety, and that they were to be surrendered only with the cancellation of the mortgage, then, of course, there could be no determination of this action without the interposition of the trustees under the first mortgage, and the plaintiff would also fail to establish a cause of action unless he showed that all of the bondholders were willing to exchange. But I have preferred to discuss the questions lying at the bottom of the case, in order that they may be met and determined, and the rights of the parties under the agreement fixed and established.

The considerations above expressed must result in the sustaining of the demurrer. As I understand the position, there is no desire to amend, but, if it shall appear that plaintiff can amend to obviate the objections which have been raised, the interlocutory judgment may so provide. Ordered accordingly.